## WARREN BANK *vs.* SUFFOLK BANK.

In an action against a bank for negligence in not duly demanding payment of a note left with them for collection, the defence being that the note was duly placed by the defendants in the hands of a competent notary public for demand and protest, and that the negligence, if any, was on his part, the defendants having been the collecting agent for the plaintiffs for more than ten years, and having invariably placed their notes in the hands of a notary for demand and protest, with the knowledge of the plaintiffs, evidence is admissible for the defendants of an invariable usage among the banks in Boston, including the defendants, when notes are sent to them for collection, to keep the same for payment until the close of banking hours, and if not then paid, to put them in the hands of a notary for demand and protest, and that the defendants did so in the present case; and if these facts be established, the defendants are not responsible for the negligence of the notary.

Warren Bank *v.* Suffolk Bank.

ACTION on the case against the defendants for negligence in not making demand upon the maker of the note hereinafter mentioned. At the trial, before *Shaw*, C. J. it appeared that on the 21st day of July, 1848, the plaintiffs, a bank at Danvers, were holders of a note signed by Stillman L. Simonds, for three hundred and ninety-six dollars and eighty-seven cents, dated April 5, 1848, and payable in four months, and indorsed by one Johonnot; that on the said twenty-first day of July, the plaintiffs' cashier left this note, with others belonging to the plaintiffs, with the defendants, a bank in Boston, for collection, but without giving any specific instructions in regard to its collection; that this note remained unpaid in the defendants' bank until the close of banking hours, on the 8th of August, the day it became due and payable· and that afterwards on the same day, the defendants placed said note in the hands of a notary public, who had been long accustomed to do the business of the bank in protesting bills and notes, for demand on the maker.

It also appeared that the notary went with the note to the late place of business of the maker in Boston, to demand said note, on the day above mentioned; that he was there told, upon inquiry, that the maker did not then " keep there," that they did not know where he was, but believed he had left the city ; that said notary then put a demand of said note of the promisor into the post-office at Boston, directed to him at Boston, and gave due notice of the dishonor of said note to the indorser by mail. It also appeared that said promisor had sold out his interest in the place of business above mentioned, on the 21st of July, preceding the notary's going there, and had no interest in it since; that at the time he resided in Chamber street, in Boston ; that his place of residence was named in the Boston Directory of that year, and that said notary had a copy of such directory.

It also appeared by the testimony of Charles Leffler, one of the plaintiffs' witnesses, and the person who bought out the maker of the note, that about the time he took the store, July 21, 1848, a usual bank notice, that a note was at their bank, and would be payable on such a day, and requesting

the maker to pay the same, was left at said store by the Suffolk Bank for said maker ; that he, Leffler, recollected seeing the notice but once, which was on the day it was left; that other letters were left at the store for Simonds, and that Simonds was at the store a few times after he bought him out, as a visitor merely, not as a place of business. It also appeared by the testimony of Simonds, who was called by the plaintiffs, that he was at said store as often as two or three times a week for three months after he sold out; that he had no recollection of receiving any letter or paper there, but that he believed all these were left at his house.

The plaintiffs' cashier, a witness called by them, testified, among other things, that the defendants had collected the notes of the plaintiffs in Boston for ten years at least; that it had been the invariable custom of the defendants, when such notes were not paid, to place them in the hands of a notary for demand and protest; and that they had charged, and the plaintiffs paid the usual fees of such notary, in all cases; that, in this case, as had been usual, the note was returned to the plaintiffs, with the protest, the day after it became due.

The defendants contended that inasmuch as they placed the note, at the close of banking hours, on the day it became payable, and remained unpaid, in the usual course of business, in the hands of a notary public, whose business it was to demand and protest such notes for demand of the maker, they had exercised reasonable care and ordinary diligence, and were not responsible to the plaintiffs for any neglect of the notary ; but the chief justice ruled otherwise.

The defendants then offered to show that it was an invariable usage of the banks in Boston, and of the defendant bank, when notes were sent to them for collection by other banks, to keep the same for payment at their bank, until the close of banking hours, on the day they became payable, and if not then paid, to put them into the hands of a notary public for demand on the maker and protest; and that the defendants did so in this case; and they contended that, if the jury were satisfied of this, the defendants were not guilty of any negligence, for which the plaintiffs could recover ; but

the chief justice ruled that such a custom and a compliance with it on the part of the defendants, if there was negligence and want of due care in the notary, would not be a good defence; that the evidence, therefore, would be immaterial, and did not admit it. The note and protest in this case were returned by the defendants to the plaintiffs the day after the note was payable, and are still held by them.

The jury returned a verdict for the plaintiffs for the amount of the note and interest. All questions of law, arising upon the foregoing report, were reserved by the chief justice for the consideration of the whole court, and judgment is to be given on the verdict, or the verdict set aside and a new trial ordered, as the court shall deem proper.

*C. T. Russell,* for the defendants.

*H. F. Durant,* for the plaintiffs.

DEWEY, J. It is unquestionably true that a bank receiving a promissory note for collection is bound to use due care and diligence in demanding payment of the maker, and giving notice of the non-payment. It is equally true that where the nature of the business in which an agent is engaged requires for its proper and reasonable execution the employment of a sub-agent, the principal agent is not responsible for the defaults of the sub-agent, provided a proper sub-agent was selected. This latter rule was sanctioned and applied by this court in *Fabens* v. *Mercantile Bank,* 23 Pick. 332; *Dorchester and Milton Bank* v. *New England Bank,* 1 Cush. 177.

The question arising in the present case is, whether the duty of making a demand on the maker of this note thus sent for collection, is one that rests wholly with the collecting bank, or one that may justify placing the note in the hands of a notary public, for the purpose of making a demand, and this being done, in a proper time and with proper care, in the selection of a notary, for his defaults he alone is liable. Upon this point there has been certainly some diversity of views entertained by different judicial tribunals. The decisions of the courts of New York have been supposed to be adverse to the discharge of the collecting bank from further liability, by reason of having placed the note in the hands of a notary

public, for the purpose of making a demand. *Allen* v. *Merchants' Bank*, 22 Wend. 215. Other tribunals have held that such delivery of the note to a competent notary public, was a case of sub-agency without further responsibility on the part of the collecting bank. *Baldwin* v. *Bank of Louisiana*, 1 Louis. Ann. Rep. 13; *Bellemire* v. *Bank of United States*, 4 Whart. 105.

But the case here is one arising upon the rejection of evidence offered to show the general usage of the banks including this bank, as to the employment of a public notary to make the proper demand upon the promisor, when such demand is necessary. It was conceded in the New York cases, that the collecting bank would not be liable for the default of the sub-agent, if there had been any understanding or agreement, express or implied, that the notes were to be transmitted to a sub-agent for collection. That effect is to be given to the usages of banks, was held by this court in *Dorchester and Milton Bank* v. *New England Bank*; and *Chicopee Bank* v. *Eager*, 9 Met. 584.

The defendants offered to show that it was the invariable usage of the banks in Boston, including the Suffolk Bank, when notes have been sent to them for collection by other banks, if the same are not paid at the proper time, to place them in the hands of a notary public, for demand on the maker and for protest, and that the defendants did this in the present case. The defendants had already shown by the evidence in this case that they had been the collecting agents of the plaintiffs of their notes for ten years at least, and that it had been the invariable custom of the defendants when such notes were not paid, to place them in the hands of a notary public, for demand and protest, and that they had demanded, and the plaintiffs had paid, the fees of the notary in such cases. This evidence of the usage and course of business was proper, and ought to have been submitted to the jury. Those dealing with a bank, and especially the plaintiffs, as to whom knowledge of this usage and the course of business in the collection of notes was shown to exist, were bound by it. It would, we think, have authorized the jury to find an im-

plied agreement or assent to the employment of a sub-agent, or notary public, for the purposes of making a demand on the maker, requiring only of the collecting bank due diligence and care in selecting the notary, or a general usage binding certainly those who were conversant of it. It is no sufficient answer to this to say that it was not absolutely necessary to employ a notary in a case like the present to certify to the demand and protest. If this was the well established course of business and known to the plaintiffs, when they sent to the defendants this note for collection, they must be bound by it.

It is also further urged that this proof of usage thus to employ a notary public is insufficient, because it does not prove any usage that banks are not in such cases liable for the default of the notary. But we think if the usage authorizes the employment of a sub-agent holding an official character, it then becomes a case of sub-agency, with the incidents of a sub-agency. A similar objection was taken in the case before cited from 1 Cush. 177, but it did not avail there.

*New trial ordered*